STATE v. WALTER M. DRAUGHON.

(Filed 27 October, 1909.)

1. Deeds and Conveyances — Forgery — Publication — Intent to Defraud—Declarations—Natural Evidence—Hearsay.

When defendant is tried for forging a deed from his father, since deceased, to himself, and uttering and publishing it with an intent to defraud the other children and heirs at law, defendant may show by a State's witness that deceased had acknowledged to this witness the execution of the deed, with deceased's

declaration at the time that defendant had done more for him than any other of his children had done, etc.; (1) it tended to show the disposition of the father towards the son at the time the deed was alleged to have been executed by the father; (2) it was natural evidence and the only obtainable evidence of the intent of the grantor, and an exception to the rule of hearsay evidence.

2. Same.

While such declarations are not direct evidence that the father executed the deed, which the son is being tried for forging, it is a material circumstance tending to show it and excluding such evidence is reversible error. The questions raised in this case by defendant upon the plea of "former acquittal" are not passed upon on this appeal as they may not again arise.

APPEAL by defendant from *W. R. Allen, J.,* February Term, 1909, of SAMPSON.

The facts are stated in the opinion.

*Attorney-General* and *G. E. Butler* for the State.
*Fowler & Crumpler, F. R. Cooper* and *J. D. Kerr* for defendant.

WALKER, J. The defendant was indicted in the court below in two counts. In one of the counts he is charged with the forgery of a deed, purporting to have been made and executed by G. B. Draughon to the defendant, dated 2 November, 1902, and conveying to him in fee certain land, containing twenty acres and therein described, for the nominal sum of one dollar. In the other count he is charged with uttering and publishing the forged instrument. The bill was drawn under sections 3424 and 3427 of the Revisal. In the first count it is alleged that the forgery was committed with intent to defraud G. B. Draughon, the alleged maker of the deed, and in the second count it is alleged that the defendant, by the forgery, intended to defraud John M. Mathis, Donnie Mathis and others, the said Donnie Mathis and others being the heirs of G. B. Draughon, who was dead when the bill of indictment was returned by the grand jury. It appears that an indictment had been found at a previous term of the court for the same forgery, simply, with intent to defraud J. M. Mathis and his wife, Donnie Mathis, the said Donnie Mathis being the child of G. B. Draughon, who was then living. The defendant was acquitted at the trial upon that indictment, under the charge of the court that there could be no such a thing in the law as an intent to defraud the heir of a living person who had but a bare possibility of inheritance from her father, applying the maxim, *Nemo est haeres viventis.* At the trial

upon the second indictment, the defendant pleaded former ac-
quittal, and relied, in support of his plea, on the verdict and
judgment in the first trial. The court held, as matter of law,
upon the admitted facts, that there had been no former acquittal
of the defendant upon the charge contained in the second bill of
indictment, and instructed the jury to disregard the plea and to
consider the case and the evidence therein only upon the defend-
ant's plea of not guilty. The jury returned a verdict of guilty,
and judgment that the defendant be confined in the State peni-
tentiary for the term of three years was rendered thereon. The
defendant, having duly excepted to divers rulings of the court,
now assigned as errors, appealed to this Court. As to the plea
of former acquittal, it is not absolutely necessary for us to pass
upon it, as we think there was error in the exclusion of testi-
mony offered by the defendant, but we will refer to it later on.

The State introduced as a witness Sherman Royall, who testi-
fied to facts very prejudicial to the defendant, and, among others,
that G. B. Draughon had virtually denied, in a conversation with
the defendant, which took place in the presence and hearing of
the witness, that he had executed the deed, and that on one occa-
sion, when the defendant was not present, as it impliedly ap-
pears, he requested the witness to see the defendant about a
rumor to the effect that the latter had a deed from him, G. B.
Draughon, and to ask the defendant for permission to see the
deed, which request the defendant refused, but he did show the
back of the deed, on which was written "G. B. Draughon to
W. M. Draughon." The defendant proposed to prove by the
same witness that G. B. Draughon admitted to him that he had
executed the deed in question to the defendant for the twenty
acres of land, and gave as his reason that he intended to do
more for the defendant than for any other child, as the defend-
ant had done more for him and had been better to him than any
of his children. This evidence, on objection by the State, was
excluded, and the defendant excepted. The Attorney-General,
with his usual frankness and fairness, conceded in the argument
before us that the court committed an error in rejecting the evi-
dence. We take an extract from his very able and well-prepared
brief: "It seems to me that the exclusion of this testimony was
error. The State had proved by the witness certain declarations
of G. B. Draughon prejudicial to the defendant. It would seem
that, upon cross-examination, the defendant should have been
allowed to show that G. B. Draughon had declared that he had
given the defendant the land, and why. It tended to support the
defendant's contention that the deed was genuine." Our opinion

is that the testimony was competent and should have been ad-
mitted by the court and considered by the jury, for the reason
that it tended to show the disposition of the father towards his
son at the time the deed was executed—in other words, his state
of mind—and that he entertained a feeling of appreciation and
gratitude toward his son, because of what he had done for him,
The State attempted to show, by the examination of this very
witness, that the deceased, G. B. Draughon, was unfriendly
toward his son, the defendant, and, by every principle of fair-
ness, justice and law relating to such evidence, the defendant
should have been permitted to show by the same witness that his
father had expressed himself to the contrary and had really
regarded the defendant as his favorite child. This kind of evi-
dence is admitted, for the reason that it is what is called natural
evidence, and the fact intended to be proved cannot easily be
established in any other way. Wherever the bodily or mental
feelings of an individual are material to be proved, the usual
expressions of such feelings are what is termed by some of the
text writers original evidence. Whether that is strictly accurate
or not, we will not stop to consider. Greenleaf seems to have
thought that it was an *exception* to the "hearsay rule." If they
are the natural language of the feelings, whether of body or
mind, they furnish satisfactory evidence, and often the only
proof of their existence, and whether such expressions were real
or feigned is for the jury to determine. In the words of *Lord
Justice Mellish,* "Wherever it is material to prove the state of a
person's mind, or what was passing in it, and what were his in-
tentions, there you may prove what he said, because that is the
only means by which you can find out what his intentions were."
*Sugden v. St. Leonards,* L. R., 1 P. D., 154; 1 Greenleaf on Ev.
(16th Ed.), sec. 162a. Greenleaf, in that section, says: "But
where a distinct assertion, in the form of words, predicating a
mental state, is offered, as 'I have a pain in my side,' or 'I have
the intention of going out of town,' or 'I do this for such-and-
such a reason,' this language is no less an assertion of the exist-
ence of a fact than is an assertion of any sort of fact. In the
neat phrase of *Lord Justice Bowen,* in *Edgington v. Fitzmau-
rice,* L. R., 29 Ch. Div., 459, 'The state of a man's mind is as
much a fact as the state of his digestion.' And, therefore, such
assertions, being taken on the credit of the declarant as testimo-
nial evidence of the fact asserted, are met by the hearsay rule
(on the principle explained, *ante,* section 99a). To admit them,
then, is to make an exception to the hearsay rule." And, for

the reason given, the evidence does not come within the rule, though in its nature partaking of hearsay.

We do not mean to decide that the declaration of the deceased father is direct evidence that he had not conveyed the land to his son, the defendant, but it is a circumstance, coming in a competent way and from a reliable source, which tends (as the Attorney-General so well said) to show that he had made the conveyance which is now alleged by the State to be a forgery.

We conclude that the evidence which was excluded should have been admitted, under the facts and circumstances of the case, as they now appear to us.

We do not decide or even consider the question whether the declaration of G. B. Draughon, while in actual possession of the land, in disparagement of his title, and therefore against his interest, he being now deceased, is competent as evidence in this case, it being a criminal action; but we leave it open for future adjudication.

The decision of the remaining question, as to the plea of former acquittal, is pretermitted by us, for it may be that the facts as they appear at the next trial may be so different from those now stated in this record that the interesting and doubtful question of law as to the validity of the plea of former acquittal may not be presented. It would not be deferential to the learned judge who may preside at the next trial to anticipate any error in his decision upon questions which may then be raised. As the double pleas of former acquittal and not guilty are to be tried together, by consent of the parties, it may turn out that the defendant will be acquitted upon the latter plea—that is, the jury may find him not guilty of the crime charged in the two bills of indictment, treated as one bill with several counts, in which event the plea of former acquittal, and the evidence and arguments to sustain it, would be eliminated from the case. There are other grave and controlling reasons which induce us to withhold any expression of opinion upon the question thus raised by the defendant's first plea. The gravity of this question is shown by the fact that the Attorney-General was in some doubt, disclosed by his brief, as to whether or not the plea had been established, and the defendant's counsel was confident that it had been. At present we consider it as an open question of law and fact, to be hereafter determined according to the law and the evidence. Perhaps the solicitor may send a new bill, and we therefore cannot now determine what the allegations of the indictment or, as we have said, what the evidence may hereafter be; but let it be understood that we do not now decide, as it is

not necessary to do so, that the plea of former acquittal was, in law, sustained, upon the bills and evidence as they now stand, or that the learned judge was in error in so charging the jury; nor must it be understood that our opinion in this case in any degree prejudices the right of the defendant to rely at the next trial upon his plea of former acquittal. We merely award a new trial, for the reason already given, leaving undecided the other questions in the case, which are not now necessarily presented.

New trial.