Criminal prosecution under bill of indictment which charges the capital felony of rape.
The evidence for the State tends to establish the following facts:
Prosecutrix lives at Pleasant Hill, a settlement on the Traphill road about four miles from the center of Elkin. On the evening of 23 August 1946 she and two girl friends, accompanied by three boys, went to a watermelon feast in or near Elkin, arriving about 7:00 p.m. They returned to the cab station Elkin, bus stop, too late to "catch" a bus. They then went to a movie. They returned to the bus stop and the three girls boarded a bus about 11:05 p.m. to go home. Prosecutrix lived about 100 yards beyond the end of the run of this bus where it turned around and returned to town. The girls noticed car with its lights off trailing the bus. Prosecutrix's two girl companions left the bus sometime before it reached the end of its run. The bus, having reached its terminus, drove into a side road to turn around. The trailing car turned on its lights and passed, went up the road, and turned around between the bus and the home of the prosecutrix. It drove up beside prosecutrix who had left the bus and started home. One of the two occupants got out. She started to run into a neighbor's yard. The driver called to the other, "Grab her." He chased her, grabbed her, put his hands over her mouth and pulled her into the car. During this time she screamed and attempted to get free but was thrown down to the floor *Page 530 
of the car and the one holding her sat upon her and held his hand over her mouth. The car drove off and she was blindfolded. She asked them what they were going to do to her, and one replied that they were going to assault her. They tried to make her drink liquor. Some distance away she was taken out of the car and the driver left for a while. During this time she attempted to get away. The car returned and she was again placed therein. Thereafter she was criminally assaulted several times by each of the occupants and was subjected to other treatment too vile and repulsive to repeat. She was likewise beaten and one of the occupants said that he was going to cut his initials on her leg and made a mark several inches long. Finally they drove into Tennessee, put the prosecutrix off in a corn field, threatened to kill her if she looked around, and drove away. She went to a home nearby about 7:00 a.m. where she was treated, given food, and later carried to town and placed on a bus for home. There was evidence of other occurrences on the trip it is unnecessary to repeat. There is likewise evidence in the record amply sufficient to identify the two defendants as the occupants of the car and the assailants of the prosecutrix.
Thereafter the defendants were apprehended by Federal and State officials and were first held by the Federal authorities on a charge of kidnapping. The judge of the Middle District entered an order 6 November 1946 releasing the defendants to the sheriff of Wilkes County for trial in the State court on the charge of rape.
While the defendants were in the custody of the officers they made statements in the nature of confessions. The statements were in the main in substantial accord with the testimony of the prosecutrix.
When the case came on for trial in the court below the defendants moved to quash the bill of indictment (1) for that the Federal court had no right to release the defendants to the State court, and therefore the State court had no jurisdiction to try the defendants on the capital felony charged; and (2) for that no women were summoned to serve at the term of court at which they were placed on trial. The motion was overruled.
The defendant Bell offered no testimony. The defendant Litteral offered testimony tending to show that he is of such low mentality that he is incapable of distinguishing right from wrong. This evidence was sharply controverted by testimony offered by the State. There was a verdict of guilty of rape as charged in the bill of indictment as to each defendant. Judgment of death was pronounced as to each and defendants appealed.
The defendants advance no argument and cite no authority to sustain their contention that the court below was without jurisdiction. The defendants, it is true, were first held by the Federal authorities on the charge of kidnapping. It may be that so long as they were in the custody of Federal officials the State was powerless to proceed. Even so, there is no provision of law, so far as we can ascertain, which denied the district judge the right to surrender the custody of the defendants to the State authorities for trial in the State court. It was a matter of comity and courtesy existing between the courts of the two jurisdictions and rested in the sound discretion of the district judge.
The State court, having obtained custody, of course had jurisdiction to proceed. S. v. Harrison, 184 N.C. 762, 114 S.E. 830; S. v. Davis,223 N.C. 54, 25 S.E.2d 164; S. v. Inman, 224 N.C. 531,31 S.E.2d 641; 14 A. J., 435.
Likewise the contention that the absence of women on the jury panel constitutes a fatal defect in the proceeding is without merit. The constitutional amendment adopted in 1946 merely makes women eligible for jury service. Before it becomes of practical application it needs must be implemented by legislation prescribing qualifications and manner of selection of women for jury service. See Chap. 1007, Session Laws, 1947. The panel was drawn and summoned and the grand jury was selected and impaneled before the effective date of the amendment and the bill was returned the day thereafter. Furthermore, so far as the record discloses the petit jury was selected without the use of any of the twenty-eight peremptory challenges available to defendants. Thus they obtained a jury acceptable to them. S. v. Koritz, post, 552.
The exception is without merit for the further reason the defendants are not of the same class or sex as those claimed to have been wrongfully excluded. Hence no discrimination is made to appear. S. v. Sims,213 N.C. 590, 197 S.E. 176; McKinney v. Wyoming, 30 P. 293, 16 L.R.A., 710; U.S. v. Chaplin, 54 F. Supp. 682.
Ballard v. U.S., 67 S.Ct., 261 (dec. Dec. 9, 1946), cited and relied on by defendants, discusses the method of selecting Federal petit and grand juries in States in which women are eligible for jury service. It is not controlling here.
Prosecutrix testified that she was kept from her home all night, maltreated, misused, criminally assaulted, left alone and in distress in the nighttime in a corn field in Tennessee. Her testimony was challenged and its credibility put at issue by the pleas of not guilty and by extended cross-examination. Hence the testimony of her mother that prosecutrix *Page 532 
did not return home that night and she, the witness, so reported to the officers and the radio station was competent in support of her testimony.S. v. Brabham, 108 N.C. 793; S. v. Bethea, 186 N.C. 22, 118 S.E. 800;S. v. Brodie, 190 N.C. 554, 130 S.E. 205; S. v. Scoggins, 225 N.C. 71;S. v. Walker, 226 N.C. 458.
To like effect was the testimony of the witnesses from Tennessee who rendered her assistance, fed her, and helped her return home. Her call for help and exclamation, "Oh, God, will somebody help me," was a spontaneous utterance prompted by and tending to show her need of help which was a result of the wicked acts of those who had kidnapped her. This testimony tends to complete the picture of what happened that night. Exception thereto cannot be sustained. S. v. Hawkins, 214 N.C. 326, 199 S.E. 284, and cases cited; S. v. Draughon, 151 N.C. 667, 65 S.E. 913.
The prosecutrix also made a statement to the officers which was reduced to writing and signed by her. Although she, while on the stand, did not refer to this writing, there was other evidence tending to identify it as her written statement. The court admitted it as corroboratory testimony and was careful to instruct the jury fully as to the nature of the testimony and the manner in which it should be considered. It was competent for the purpose for which it was offered and was properly admitted.
It may be that there are some parts of this written statement which do not tend to corroborate the witness. Even so, the defendants made no motion to strike or to exclude such parts of the statement as might not be competent for that purpose. They were content to enter a general objection to the statement as a whole. This did not require the presiding judge to sift the writing and eliminate therefrom any part thereof which in his opinion might not tend to corroborate. If the defendants objected to the statement in part and not as a whole they should have so indicated by proper motion or exception. S. v. English, 164 N.C. 497, 80 S.E. 72; S.v. Wilson, 176 N.C. 751, 97 S.E. 496; S. v. Shepherd, 220 N.C. 377,17 S.E.2d 469; S. v. Britt, 225 N.C. 364.
One Reavis, witness for the State, noticed the two defendants about 5:00 or 5:30 of the afternoon preceding the assault, near the cab station. They were on a 1940 Ford coach. He saw them again about 10:30 that night. He noted on his cab book a description of the automobile and the number of its license plate. On the stand he testified concerning the facts disclosed by this memorandum. Next day the officers investigating the crime found the license plate in a stove pipe in the loft of a barn at defendant Bell's home. They made a memorandum thereof. That these memoranda were competent as tending to corroborate these witnesses would seem to be too clear to require discussion. Stansbury, N.C. Evidence, Sec. 51, p. 81; S. v.Scoggins, supra; S. v. Bethea, supra. *Page 533 
The defendant Litteral was first apprehended. On 30 August he signed a statement in the nature of a confession. This statement was offered and admitted in evidence as against him only without objection.
Thereafter, about midnight, 2 September, officers apprehended and arrested Bell at his home. He made a statement which was reduced to writing and signed by him. When this writing was identified by one of the witnesses and offered in evidence Bell objected. Thereupon, the court, of its own motion, had the jury retire and offered this defendant an opportunity to challenge the voluntariness on voir dire. Upon the close of the voir dire
the court overruled the objection, had the jury return, and admitted the statement in evidence. Exception thereto cannot be sustained.
While it is the better practice for a judge on a voir dire respecting an alleged confession to make his finding as to the voluntariness thereof and enter it in the record, a failure so to do is not fatal. Voluntariness is the test of admissibility, and this is for the judge to decide. His ruling that the evidence was competent of necessity was bottomed on the conclusion the confession was voluntary. S. v. Hawkins, supra.
There is nothing in this record upon which a contrary conclusion could be based. Confessions, nothing else appearing, are presumed to be voluntary. S. v. Bennett, 226 N.C. 82; S. v. Wise, 225 N.C. 746; S. v.Mays, 225 N.C. 486; S. v. Grass, 223 N.C. 31, 25 S.E.2d 193; S. v.Wagstaff, 219 N.C. 15, 12 S.E.2d 657; S. v. Hudson, 218 N.C. 219,10 S.E.2d 730; S. v. Murray, 216 N.C. 681, 6 S.E.2d 513. They are not rendered incompetent by reason of the fact the defendant was at the time under arrest or in jail or in the presence of armed officers. S. v.Thompson, 224 N.C. 661, 32 S.E.2d 24; S. v. Wagstaff, supra; S. v.Richardson, 216 N.C. 304, 4 S.E.2d 852; S. v. Murray, supra; S. v.Smith, 213 N.C. 299, 195 S.E. 819; S. v. Exum, 213 N.C. 16,195 S.E. 7; S. v. Caldwell, 212 N.C. 484, 193 S.E. 716; S. v. Stefanoff,206 N.C. 443, 174 S.E. 411; S. v. Rodman, 188 N.C. 720, 125 S.E. 486;S. v. Newsome, 195 N.C. 552, 143 S.E. 187.
The defendant Litteral tendered Dr. Kelly, an alienist and teacher of neuropsychiatry, as a witness in his behalf. This witness testified that the defendant, in his opinion, is mentally incapable of distinguishing right from wrong. He based that opinion in part on information received from Litteral during a two-hour conference with him. The court permitted the solicitor to cross-examine in respect to statements made by Litteral for the purpose of testing the soundness of and impeaching the conclusion made by the witness. This evidence was not incompetent by reason of the physician-patient relationship. G.S., 8-53; Smith v. Lumber Co.,147 N.C. 62; S. v. Newsome, supra; Stansbury, N.C. Evidence, Sec. 63, p. 110. Furthermore, when the defendant offered the *Page 534 
doctor as a witness he waived the confidential relationship, if any existed, and opened the door for cross-examination concerning all matters about which the witness had testified. Jones v. Marble Co., 137 N.C. 237.
Neither was it incompetent for the reason it involved former conduct of the defendant and tended to show a criminal record. The doctor gave his opinion as to the mental capacity of the defendant. The solicitor had a right to inquire into the basis of that opinion. The cross-examination was confined to that question. That it incidentally developed facts concerning the defendant's bad record is a risk he took when he tendered the witness for examination-in-chief. Milling Co. v. Highway Comm., 190 N.C. 692,130 S.E. 724; S. v. Beal, 199 N.C. 278 (298), 154 S.E. 604; S. v. Cox,201 N.C. 357, 160 S.E. 358; S. v. Nelson, 200 N.C. 69,156 S.E. 154; S. v. Ray, 212 N.C. 725, 194 S.E. 482; Bank v. Motor Co.,216 N.C. 432, 5 S.E.2d 318; Foxman v. Hanes, 218 N.C. 722,12 S.E.2d 258; S. v. Shepherd, supra.
It is not amiss to note in this connection that the intelligent manner in which this defendant answered the questions of the witness and detailed occurrences in his life from childhood gives reason to understand why the jury accepted the testimony of the State's witnesses as to his sanity rather than that of the alienist and demonstrates the justice of the rule which permits the line of cross-examination conducted by the solicitor.
There are a number of exceptions to the charge of the court. We have examined each one of them with care without regard to whether they were brought forward and discussed in the brief. No one of them points to cause for disturbing the verdict.
The court correctly charged the law of the case. It was not required to give all the contentions. It was under the duty only to state them as fairly for the one side as for the other. S. v. Colson, 222 N.C. 28,21 S.E.2d 808; Trust Co. v. Ins. Co., 204 N.C. 282, 167 S.E. 854; CabCo. v. Sanders, 223 N.C. 626, 27 S.E.2d 631; S. v. Friddle,223 N.C. 258, 25 S.E.2d 751.
Its statement that the jury in arriving at a verdict must be governed by their recollection of the testimony is in accord with the authorities. S.v. Cameron, 223 N.C. 464, 27 S.E.2d 84; S. v. Harris, 213 N.C. 648,197 S.E. 156.
The jury came into court to report agreement and returned a verdict as to defendant Litteral of guilty as charged in the bill of indictment. As they were about to return their verdict as to defendant Bell the court interrupted them, informed them that it could not accept the verdicts tendered and instructed them that they should spell out the verdicts which should be: guilty of rape as charged in the bill of indictment, or, guilty of assault with intent to commit rape, or, not guilty. The jury shortly thereafter returned the verdicts which appear of record. The defendant Bell excepts. The assignment of error bottomed on this *Page 535 
exception is untenable. S. v. Wilson, 218 N.C. 556, 11 S.E.2d 567;S. v. Perry, 225 N.C. 174; S. v. Bishop, 73 N.C. 44; S. v. Brown,204 N.C. 392, 168 S.E. 532; S. v. Noland, 204 N.C. 329, 168 S.E. 412;S. v. Godwin, 138 N.C. 582.
After a careful examination of all the exceptions in the record we are persuaded the defendants were accorded a fair trial, free of prejudicial error. Hence the judgments must be affirmed as to both defendants.
No error.