STATE OF NORTH CAROLINA v. ROGER WARREN CLARK

No. 77

(Filed 7 October 1980)

1. **Criminal Law § 92.4– several charges against one defendant – consolidation proper**

    The trial court properly allowed the State to join for trial offenses of kidnapping one person and kidnapping and murdering another person where the State submitted a written motion to join prior to trial stating that it was made pursuant to G.S. 15A-926, which provides for joinder when offenses are based on a series of acts or transactions connected together or constituting parts of a single scheme or plan, and in this case all of the matters out of which the joined cases grew occurred on the same afternoon of the same day and each was perpetrated according to a common *modus operandi.*

2. **Criminal Law § 66.6– lineup procedure not suggestive – in-court identification proper**

    In-court identifications of defendant by two witnesses were not tainted by a pretrial lineup procedure which defendant contended was suggestive and conducive to irreparable mistaken identity where the evidence tended to show that both witnesses had ample opportunity to observe defendant in the daytime at close range and during an encounter which involved only two people; each witness gave police a substantially correct description of her assailant prior to the lineup; the lineup consisted of six men who had reasonably similar physical characteristics; the identification by each witness was certain and was made at a lineup conducted within two days of the crime; no one suggested to the witnesses which person they should pick; and the lateness of the hour when the lineup was held and the summoning of witnesses at that late hour did not create a defectively suggestive pretrial identification by indicating someone in the lineup was a prime suspect.

3. **Criminal Law § 82.2– testimony by psychiatrist – no bona fide doctor-patient relationship – waiver of right to privileged communication**

    Cross-examination of defendant's psychiatrist concerning incriminating statements made by defendant did not violate defendant's statutory right to privileged communication with his doctor on the basis that no bona fide doctor-patient relationship existed between defendant and his expert witness, or on the basis that, even assuming a valid relationship, defendant waived his right to the privilege by putting the doctor on the stand.

**4. Criminal Law § 112.6– insanity – burden of proof on defendant**

The trial court did not err in placing upon defendant the burden of proving his defense of insanity to the satisfaction of the jury.

Justice BROCK did not participate in the consideration or decision of this case.

APPEAL by defendant from *Barbee, J.*, 6 April 1979 Criminal Session of CABARRUS Superior Court.

Defendant was charged in separate bills of indictment with the kidnapping of Gay Porter and the kidnapping and murder of Phoebe Alisa Barbee. Upon motion of the State and over defendant's objection, the trial judge joined the charges for trial. Defendant properly notified the State of his intention to rely on the defense of insanity. At arraignment, defendant entered a plea of not guilty to each charge.

On the charge of kidnapping Gay Porter, the State offered evidence tending to show that on 11 September 1978 at about 1:15 in the afternoon Gay Porter was driving on Interstate 85 in Rowan County when a truck pulled alongside, and the driver motioned toward the rear of her car. Ms. Porter pulled off to the side of the road and asked the driver of the truck "what the trouble was." At this point in her testimony, the witness was asked to identify the driver of the pickup truck. Defendant objected, and, after conducting a voir dire hearing, the trial judge permitted the witness to identify defendant as the person she saw on this occasion. Ms. Porter then testified before the jury that defendant told her that he owned a wrecker, and he would be willing to drive her to Charlotte and arrange for her automobile to be towed. She agreed, and, after entering the truck, defendant began to crisscross through the countryside on secondary roads despite her directions that he proceed directly to Charlotte. Upon arriving in Charlotte, the driver propositioned Ms. Porter and, against her will, placed his hands between her legs and on her breasts. At this point, Ms. Porter grabbed the steering wheel and caused the truck to strike a road sign and stop. After a struggle, she managed to obtain her pocketbook and escape from the truck. She obtained a ride with a young girl who had stopped nearby.

State v. Clark

On the charges of kidnapping and murder of Phoebe Alisa Barbee, the State's evidence tended to show that on the same afternoon Lisa Bingaman was traveling toward Matthews, North Carolina, when a man in a pickup truck motioned to her to pull over. He told her that black smoke was coming from her automobile and offered to take her where she was going and arrange to have her car towed. She rejected his offer, and at that time he pinched her breasts; she slapped him and after a scuffle the driver of the truck left. When the witness Ms. Bingaman was asked to identify the driver of the truck, defendant again objected, and a voir dire hearing was held. After hearing evidence, the trial judge denied defendant's motion to suppress. We will consider the evidence presented at the voir dire hearings in connection with our consideration of the pertinent assignment of error. The State also offered evidence tending to show that Phoebe Alisa Barbee left for work on the morning of 11 September 1978. She was driving a 1978 Toyota automobile and was wearing a white uniform with a blue and white apron smock. She left her place of employment at about 3:00 p.m. driving the same automobile and dressed in the same manner. About 3:15 p.m. on that afternoon, a witness observed a Toyota sitting on the side of the road with a blue truck parked behind it. He noticed that the driver of the car was a young girl and that a white male was the driver of the truck. Another witness who lived on Highway 27 saw a Toyota and a truck stop across the road from her home and observed a young girl get into the truck with a man and depart.

Jerry McLaurin testified that he also saw a small gray Toyota with a pickup truck parked behind it on Highway 27. He saw a young girl and a man whom he recognized as defendant. McLaurin drove past and turned around, but when he arrived at the place where he had seen the truck and automobile, the young girl, the man and the truck were gone. The Toyota automobile was still parked on the side of the road.

Claude Allen, Jr., testified that when he was getting off a school bus at about 3:50 p.m. the same date he saw a man whom he identified as defendant drive by in a pickup truck with another person in it. Another witness saw the truck turn around near Teeter Bridge and come back past the school bus.

The truck then turned off Miami Church Road and proceeded down a dirt road. There was evidence that a body was discovered on 12 September at about 1:00 p.m. near an old corncrib on a dirt road off of Miami Church Road. The body was later identified as that of Phoebe Alisa Barbee. Medical testimony indicated that her death was caused by one of multiple blows from a blunt object which caused a fracture to the skull and injury to the brain. An autopsy of the body revealed other wounds including shallow tears around the anus. There was sperm in the anal cavity.

Pursuant to a written authorization from defendant and an express oral authorization by defendant's father-in-law, who owned and resided in the home where defendant lived, the premises were searched. Officers found a blue work uniform with blood smears on it which were later found to be of the same blood-type as that of the victim. Blood of the same type as that of the victim and human hair which matched the victim's hair were found in a pickup truck which belonged to defendant's father-in-law and which defendant was using on 11 September 1978.

Defendant offered evidence tending to show that his mother and father were afraid of him and that he was moody at times and on occasion was violent and dangerous.

Defendant also offered the testimony of Dr. Charles E. Smith, an expert in the field of forensic psychiatry. Dr. Smith testified that he had examined defendant on two occasions in January, 1979, and that it was his opinion that defendant suffered from schizophrenia. It was his opinion that on 11 September 1978, defendant was unable to know right from wrong or to appreciate the nature and quality of his acts. On cross-examination and over the objection of defendant, Dr. Smith was permitted to testify about inculpatory statements defendant made during consultation.

Defendant did not testify in his own behalf.

In rebuttal, the State offered the testimony of Dr. James Groce, an expert in the field of forensic psychiatry. Dr. Groce

testified that he interviewed and observed the defendant on several occasions and that in his opinion on 11 September 1978 defendant knew the nature and quality of his acts and was able to distinguish right from wrong.

The trial judge submitted the possible verdicts of guilty, not guilty and not guilty by reason of insanity on each of the kidnapping counts. He submitted the same three possible verdicts on the charge of first-degree murder and the lesser included offense of second-degree murder. The jury returned verdicts finding defendant guilty on both kidnapping charges and guilty of first-degree murder. The trial judge entered judgments imposing a sentence of life imprisonment on the charge of first-degree murder and consecutive sentences of life imprisonment on the verdicts of kidnapping. The judgment of guilty of kidnapping Phoebe Alisa Barbee was arrested. Defendant appealed.

*Rufus L. Edmisten, Attorney General, by George W. Boylan, Assistant Attorney General, for the State.*

*James C. Johnson, Jr., for defendant.*

BRANCH, Chief Justice.

[1] Defendant assigns as error the trial judge's ruling permitting the State to join the offenses for trial.

Defendant first argues that there was procedural error in that the motion for joinder did not set forth the grounds except by reference to a statute. The provisions of G.S. 15A-951 require that all motions made prior to trial must be in writing and must state the grounds upon which the motion is based. Here the State submitted a written motion to join the cases prior to trial stating that it was made pursuant to G.S. 15A-926. Defendant answered the State's motion with specific objections to joinder, and, after a hearing, the trial judge joined the cases. Assuming, without deciding, that the State improperly submitted its written motion without stating factual grounds therefor, defendant fails to show that this omission was prejudicial to him.

G.S. 15A-926 provides that when an accused is charged with two or more offenses, such offenses may be joined for trial when they are "based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan."

In ruling upon a motion for joinder, the trial judge should consider whether the accused can be fairly tried upon more than one charge at the same trial. If such consolidation hinders or deprives the accused of his ability to present his defense, the cases should not be consolidated. *State v. Davis*, 289 N.C. 500, 223 S.E. 2d 296 (1976). In determining whether defendant has been prejudiced, the question posed is whether the offenses are so separate in time and place and so distinct in circumstances as to render a consolidation unjust and prejudicial to an accused. *State v. Greene*, 294 N.C. 418, 241 S.E. 2d 662 (1978). However, it is well established that the motion to join is addressed to the sound discretion of the trial judge and his ruling will not be disturbed absent a showing of abuse of discretion. *State v. Davis, supra; Dunaway v. United States*, 205 F. 2d 23 (D.C. Cir., 1953). In the instant case, all of the matters out of which the joined cases grew occurred on the same afternoon of the same day and each was perpetrated according to a common *modus operandi*. Thus, the facts of this case meet the statutory requirements for joinder, and the record shows that the respective charges are not so distinct in time and circumstances as to prejudicially hinder or deprive defendant of his ability to defend any one of the charges.

We hold that the trial judge, acting in the exercise of his discretion, properly joined the cases for trial.

[2] Defendant next contends that the trial judge erred by overruling his motion to suppress the in-court identifications of defendant by the witnesses Gay Porter and Lisa Bingaman. It is his position that the pretrial lineup was so suggestive and conducive to irreparable mistaken identity that it tainted the in-court identification.

On each occasion, defendant objected to the respective in-court identification, and the trial judge properly excused the

jury and conducted a voir dire hearing to determine the admissibility of that evidence. *State v. Accor*, 277 N.C. 65, 175 S.E. 2d 583 (1970).

The witnesses Porter and Bingaman viewed the same lineup at different times during the early morning hours of 13 September 1978. The pertinent evidence at each voir dire hearing tended to show that defendant voluntarily waived his right to counsel before the lineup procedure was held. The lineup consisted of six men recruited by sheriff's deputies from a nearby work place. Defendant who was five feet seven inches tall was the shortest man in the lineup, but the lineup included another man five feet eight inches tall and two men at five feet ten inches tall. Each man in the lineup had reasonably similar physical characteristics. Defendant had a mustache and beard, and each of the other men in the lineup also had facial hair. No one suggested to either of the witnesses whom they should identify, and no one furnished them the names of any of the persons who made up the lineup. Neither of the witnesses had previously been shown any photographs of any of the persons. The witness Bingaman was the first to view the lineup, and she picked out number five, defendant, as being the person who assaulted her on 11 September 1978. When the witness Porter viewed the lineup, she also identified number five, defendant, as the person driving the pickup truck on 11 September 1978.

At the conclusion of each of the voir dire hearings, the trial judge after finding facts concluded that the in-court identification of defendant by each of the witnesses was of independent origin based solely on what the witness saw at the time defendant was in her presence on 11 September 1978. He also found that the identification did not result from any pretrial identification procedures.

An improper out-of-court identification procedure requires suppression of an in-court identification unless the trial judge determines that the in-court identification is of independent origin. *State v. Henderson*, 285 N.C. 1, 203 S.E. 2d 10 (1974). The test to determine the validity of pretrial identification procedures under the due process clause is whether the totality of the circumstances reveals pretrial procedures so suggestive

and conducive to irreparable mistaken identity as to offend fundamental standards of decency, fairness, and justice. *State v. Henderson, supra.* Even if the pretrial procedure is invalid, the in-court identification will be allowed if the trial judge finds it is of independent origin. *State v. Headen,* 295 N.C. 437, 245 S.E. 2d 706 (1978). After hearing the voir dire evidence, the trial judge must make findings of fact to determine whether the in-court identification meets the tests of admissibility. *State v. Tuggle,* 284 N.C. 515, 201 S.E. 2d 884 (1974). The standards to be used to determine reliability of the identification are those set out in *Neil v. Biggers,* 409 U.S. 188, 34 L.Ed. 2d 401, 93 S.Ct. 375 (1972) — (1) opportunity to view, (2) degree of attention, (3) accuracy of description, (4) level of certainty, (5) time between crime and confrontation. *See State v. Headen, supra.* If the findings of the trial judge are supported by competent evidence, they are conclusive on the appellate courts. *State v. Tuggle, supra.*

Here both witnesses had ample opportunity to observe defendant in the daytime, at close range and during an encounter which involved only two people. Each witness gave police a substantially correct description of her assailant prior to the pretrial lineup. The identification by each witness was certain and was made at a lineup conducted within two days of the crime. Even so, defendant further argues that the lateness of the hour when the lineup was held and the summoning of witnesses at that late hour created a defectively suggestive pretrial identification by indicating someone in the lineup was a prime suspect. We do not agree. Any such suggestiveness is implicit in simply holding a pretrial lineup. Expeditious determination of eyewitness identification benefits the potential defendant in that a failure of identification may speed his release, and it benefits the identification process by allowing the eyewitness to view the suspect while the details of the crime are still fresh in his or her mind.

In instant case, the findings of the trial judge are supported by ample competent evidence and are conclusive on this Court. We therefore hold that the trial judge correctly denied defendant's motion to suppress the identification testimony of the witnesses Gay Porter and Lisa Bingaman.

**[3]** Defendant next contends that the trial judge erred in overruling his objections to the admission of certain statements made by defendant to his psychiatrist. Defendant argues that the self-incriminating statements testified to by the psychiatrist on cross-examination by the State violated defendant's statutory right to privileged communication with his doctor. The State answers, first, that no bona fide doctor-patient relationship existed between defendant and his expert witness and, second, that, even assuming a valid relationship, defendant waived his right to the privilege by putting the doctor on the stand.

G.S. 8-53 provides:

No person, duly authorized to practice physic or surgery, shall be required to disclose any information which he may have acquired in attending a patient in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon. Confidential information obtained in medical records shall be furnished only on the authorization of the patient, or if deceased, the executor, administrator, or, in the case of unadministered estates, the next of kin; provided, that the court either at the trial or prior thereto, or the Industrial Commission pursuant to law may compel such disclosure, if in his opinion the same is necessary to a proper administration of justice.

This Court has dealt with the assertion of the protection afforded by the provisions of G.S. 8-53 in this precise situation in *State v. Litteral*, 227 N.C. 527, 43 S.E. 2d 84 (1947). The Court held that the statements made to the "alienist" in *Litteral* were not incompetent by reason of the statute, although the Court was not clear about whether the basis of the holding was the absence of a bona fide doctor-patient relationship or waiver of the privilege by placing the doctor on the stand.[1] *See State v. Litteral, supra* at 533-34, 43 S.E. 2d at 88-89. Under the facts of the

---

[1]See Annot., 44 A.L.R. 3d 24, §§24(a), 31 (1972). This annotation on the psychotherapist-patient privilege cites *Litteral* for both propositions.

case before us, a choice between the two bases is still not required. Under either basis the cross-examination did not violate defendant's right to privileged communication.

That defendant's statements testified to by his psychiatrist amount to a confession creates no difficulty. The Court stated in *Litteral*, "The doctor gave his opinion as to the mental capacity of the defendant. The solicitor had a right to inquire into the basis of that opinion." *State v. Litteral, supra* at 534, 43 S.E. 2d at 89. In instant case, the trial court judge specifically asked the psychiatrist whether his determination of defendant's sanity was based on defendant's statements to the psychiatrist about the incidents surrounding the crimes, and the psychiatrist answered that it was. After the psychiatrist testified to the statements by defendant, the trial judge correctly instructed the jury that the psychiatrist's testimony about the statements be considered only for the light it shed on the psychiatrist's opinion that defendant was insane at the time of the crimes.

The admission of the challenged statements is consistent with North Carolina case law and cases from other jurisdictions. *In re Spencer*, 46 Cal. Reptr. 753, 406 P. 2d 33 (1965); *State v. Whitlow*, 45 N.J. 3, 210 A. 2d 763 (1965); and *State v. Newsome*, 195 N.C. 552, 143 S.E. 187 (1928). In *Newsome*, this Court permitted a psychiatrist appointed by the trial court at defense counsel's request to testify during the State's case-in-chief about a *confession* made to the psychiatrist by the defendant during consultation.

[4] Finally, defendant assigns as error the trial judge's instruction placing upon defendant the burden of proving his defense of insanity to the satisfaction of the jury. Defendant recognizes that this assignment runs counter to a long line of decisions by this Court including the recent case of *State v. Leonard*, 300 N.C. 223, 266 S.E. 2d 631 (1980). We therefore find no error in this portion of the trial judge's instructions.

No error.

Justice BROCK did not participate in the consideration or decision of this case.