STATE OF NORTH CAROLINA v. EUGENE ALEXANDER GRIER

No. 8326SC584

(Filed 21 August 1984)

1. **Criminal Law § 66.15— pretrial photographic and lineup identifications—independent origin of in-court identification**

An in-court identification of defendant by an assault victim was of independent origin and was not tainted by pretrial photographic or lineup identifications where the witness had ample time and opportunity to observe defendant at close range and in good light; although the witness was somewhat inaccurate in her description of defendant's age and the amount of facial hair he had, and had some difficulty in identifying defendant from photographic displays, she exhibited a high degree of certainty at the time she confronted defendant, identifying him almost immediately upon viewing the lineup; and only twenty-one days elapsed between the time of the offense and the pretrial identification.

2. **Assault and Battery § 16.1— assault with deadly weapon with intent to kill inflicting serious bodily injury—evidence of injuries—submission of lesser offense not required**

In a prosecution for assault with a deadly weapon with intent to kill inflicting serious bodily injury, the trial court did not err in refusing to instruct the jury on the lesser included offense of assault with a deadly weapon with intent to kill where the uncontradicted evidence showed that two victims were shot with a gun; their injuries required immediate hospitalization; each required subsequent surgery; each was unable to work for some time due to their injuries; and each suffered substantial pain and experienced at least temporary physical impairment.

3. **Criminal Law § 138— severity of sentence—drug use—no consideration as mitigating factor**

Although defendant presented no evidence of drug use at the time of the offense, the trial court could have inferred from the fact of the prior and subsequent use of addictive drugs that defendant was under the influence of drugs at the time of the offense and was attempting to rob his victim to support his drug habit; however, defendant presented no evidence demonstrating that his culpability for the offense was reduced due to his drug habit, and the trial court therefore was not required to consider that the drug use was a mitigating factor.

APPEAL by defendant from *Sitton, Judge.* Judgment entered 29 November 1982 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 10 January 1984.

On 23 August 1982, the Mecklenburg County grand jury returned indictments charging defendant, Eugene Alexander Grier,

with robbery with a firearm and two counts of assault with a deadly weapon with intent to kill inflicting serious bodily injury. A jury found defendant guilty of the two assault charges and of attempted robbery with a firearm. Defendant was sentenced to twenty-eight years imprisonment on the attempted robbery conviction and to six years imprisonment on each of the assault convictions, with all sentences to run consecutively. From the verdict and sentences, defendant appeals.

*Attorney General Edmisten, by Assistant Attorney General Fred R. Gamin, for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender Marc D. Towler, for defendant appellant.*

JOHNSON, Judge.

By his assignments of error, defendant presents three questions for review: (1) whether in-court identification of defendant was tainted by an impermissibly suggestive pretrial identification procedure; (2) whether the trial court erred in refusing to instruct the jury on the lesser included offense of assault with a deadly weapon with intent to kill; and (3) whether the trial court erred in failing to find as a mitigating factor that at the time of the offense, defendant suffered from a drug problem that was insufficient to constitute a defense but significantly reduced his culpability. For the reasons set forth below, we find no prejudicial error.

The State's evidence tended to show that on 23 July 1982, Amy Marie Bordonaro was employed as a secretary at Abernathy/Poetzsch Architects. Two black males entered the reception area of Abernathy/Poetzsch, walked within ten to fifteen feet of Ms. Bordonaro, and asked for directions. She later identified defendant as one of the two men.

As the two men were apparently preparing to leave, they turned back toward Ms. Bordonaro. At this time defendant produced a gun, pointed it at Ms. Bordonaro's waist, and demanded that she give him her ring. Defendant was then within arm's reach of Ms. Bordonaro. The lighting in the reception area was good and there was nothing obstructing defendant's face. Ms. Bordonaro testified that she had ample opportunity to view defend-

ant, but admitted that she did not concentrate upon defendant's face for identification purposes.

After Ms. Bordonaro refused to surrender her ring to defendant, he struck her in the right eye, causing her to fall against a typewriter. She screamed and heard footsteps coming down the stairs into the reception area. Before she turned to run, Ms. Bordonaro saw defendant lift his arm toward the stairs and heard a shot fired. As Ms. Bordonaro ran toward another room, she heard another shot and felt pain in her left buttock, where she was struck by a bullet. She heard the two men leave a short time thereafter. Ms. Bordonaro originally testified that the men were in the office for forty-five minutes. Cross-examination tended to show that they were in the office only a few minutes. Ms. Bordonaro subsequently revised her testimony and claimed that the men were in her presence for fifteen minutes.

The State's evidence further showed that Mr. Michael Hill, an architect with Abernathy/Poetzsch Architects, heard Ms. Bordonaro scream and ran down the stairs into the reception area. Defendant pointed the gun at Mr. Hill's waist and fired, hitting Mr. Hill. Both Mr. Hill and Ms. Bordonaro were taken to the hospital with gunshot wounds.

I

[1]  By his first assignment of error, defendant contends that the pretrial identification procedure was so impermissibly suggestive as to create a substantial likelihood of irreparably mistaken identification, and that the trial court therefore erred in denying defendant's motion to suppress Ms. Bordonaro's in-court identification testimony.

The evidence tended to show that in the hospital emergency room on 23 July 1982, Ms. Bordonaro gave only a general description of the suspects to the police officer. She described defendant's build and features, estimating that the gunman was 18 to 25 years old and had a dirty, unshaven appearance. At the time of his arrest, eight days later, defendant was thirty-five years old and had a very prominent moustache. In the emergency room, Ms. Bordonaro was shown two displays of six photographs of black males by a police officer. The defendant's picture was not in either of the photographic displays and Ms. Bordonaro did not

positively identify anyone. Six days later, on 29 July 1982, Ms. Bordonaro was shown six photographs and again she made no positive identification. Defendant's photograph was in this display. On 30 July 1982, Ms. Bordonaro was shown two more displays of six photographs each. A photograph of the defendant was in one display. The defendant's photograph was the only one with writing at the bottom. The photograph was captioned "City Police, Charlotte, North Carolina 81-844." Defendant's name was. on the back of the photograph, although both Ms. Bordonaro and the police officer present testified that Ms. Bordonaro did not view the backs of the photographs. Ms. Bordonaro hesitated at this photograph and indicated that it looked somewhat like the man in the office on 23 July 1982; but she did not positively identify anyone from the display.

On 13 August 1982, twenty-one days after the incident, Ms. Bordonaro observed a lineup of six black males at the Mecklenburg County Jail. Defendant was among the six men and his counsel was present and participated in the organization of the lineup. Ms. Bordonaro viewed the lineup for only a few seconds before positively identifying defendant, Eugene Alexander Grier, as the person who was in her office on 23 July 1982.

On 13 October 1982, defendant filed a motion to suppress the identification testimony of Ms. Bordonaro. A hearing was held on the motion immediately prior to trial on 17 November 1982. At the conclusion of the hearing, Judge Sitton denied the motion to suppress the identification testimony. He found, *inter alia*, that although Ms. Bordonaro testified that seeing the defendant in the lineup did help her somewhat in the in-court identification, she was, nevertheless, basing her in-court identification upon her observance of the person in her office on 23 July 1982. Based on the findings of fact, Judge Sitton concluded as a matter of law, *inter alia*, that there was "clear and convincing evidence [that] the in-court identification of the defendant is of original origin, based upon the witness's testimony of what she saw at the time of the crime, and is not tainted by any pre-trial identification procedure."

Defendant argues that the photographic display and physical lineup together constituted an impermissibly suggestive pretrial procedure. Defendant admits, however, that a pretrial identifica-

tion procedure which is unduly suggestive does not require suppression of an in-court identification if the State shows that the in-court identification is independent of the suggestive procedure and is thus untainted by the pretrial identification procedure.

In *State v. Clark*, 301 N.C. 176, 270 S.E. 2d 425 (1980), the Supreme Court discussed the reliability of in-court identification testimony:

> An improper out-of-court identification procedure requires suppression of an in-court identification unless the trial judge determines that the in-court identification is of independent origin. . . . The test to determine the validity of pretrial identification procedures under the due process clause is whether the totality of the circumstances reveals pretrial procedures so suggestive and conducive to irreparable mistaken identity as to offend fundamental standards of decency, fairness, and justice. . . . Even if the pretrial procedure is invalid, the in-court identification will be allowed if the trial judge finds it is of independent origin. . . . After hearing the voir dire evidence, the trial judge must make findings of fact to determine whether the in-court identification meets the tests of admissibility. . . . The standards to be used to determine reliability of the identification are those set out in *Neil v. Biggers*, 409 U.S. 188, 34 L.Ed. 2d 401, 93 S.Ct. 375 (1972)—(1) opportunity to view, (2) degree of attention, (3) accuracy of description, (4) level of certainty, (5) time between crime and confrontation. . . . If the findings of the trial judge are supported by competent evidence, they are conclusive on the appellate courts. (Citations omitted.)

*Id.* at 182-183, 270 S.E. 2d at 429.

We find that there was sufficient evidence for the trial court to conclude that the prosecutrix's in-court identification was of independent origin. Although Ms. Bordonaro was somewhat inaccurate in her description of defendant's age and the amount of facial hair that he had, the evidence showed that she nevertheless had ample time and opportunity to observe the defendant at close range and in good lighting. Ms. Bordonaro exhibited a high degree of certainty at the time she confronted defendant, identifying him almost immediately upon viewing the lineup. In addition,

only twenty-one days had elapsed between the time of the offense and the pretrial identification.

In *State v. Hunt*, 287 N.C. 360, 215 S.E. 2d 40 (1975), the pretrial identification procedure was very similar to the procedure followed in this case. There, the prosecutrix viewed the defendant both in a photographic display and through a one-way mirror, but was unable to make a positive identification. One month later, she made a positive identification of the defendant from a lineup. *Id.* at 365, 215 S.E. 2d at 44. The Supreme Court concluded that the lapse of time did not destroy the reliability of the identification. *Id.* at 371, 215 S.E. 2d at 47. In *Hunt*, the pretrial identification was made one month and eleven days after the offense; here, the time lapse was just 21 days. In reviewing the length of the time lapse, as well as the other four factors from *Neil v. Biggers, supra*, we conclude that the trial court's finding, that the in-court identification was of independent origin, is supported by competent evidence. The trial court's finding is therefore conclusive on appeal. *State v. Clark, supra.* Accordingly, we find no prejudicial error in the admission of the in-court identification testimony.

## II

[2] Defendant also assigns error to the trial judge's refusal to instruct the jury on the lesser included offense of assault with a deadly weapon with intent to kill.

Evidence as to the victim's injuries was uncontradicted and tended to show that Ms. Bordonaro was shot in the buttock with the bullet lodging in the front of her leg; that she was hospitalized the day of the shooting but released the next day; that she suffered great pain as a result of her injury; and that three months later she returned to have the bullet surgically removed from her leg. Ms. Bordonaro testified that initially she was unable to walk and was confined to a couch for at least a week and a half. At the time of the trial, she testified that she could not bend over or engage in certain recreational activities due to the injury to her muscle; however, the muscle was expected to heal in time.

Testimony indicated that Mr. Hill was shot in the abdominal area; that on the day of the shooting he was hospitalized and underwent surgery to repair a damaged colon and damaged

nerves in his right leg; that one week later he underwent a second surgical operation to remove the bullet from his back; and that he suffered great pain as a result of the injury. He testified that he remained in the hospital for two weeks and at home recouperating for six weeks. Mr. Hill was still under a doctor's care at the time of the trial and testimony indicated that he had nerve damage in his right leg and pelvic area, preventing him from walking normally. However, there was no evidence to indicate that his condition would be permanent.

The trial judge instructed the jury as follows:

So, I charge that if you find from the evidence, beyond a reasonable doubt, that on or about July 23, 1982, Eugene Alexander Grier intentionally shot Amy Bordonaro with a pistol, and that Eugene Grier intended to kill Amy Bordonaro and did seriously injure her, it would be your duty to return a verdict of guilty of assault with a deadly weapon with intent to kill, inflicting serious injury. As to the serious injury, the Court instructs you that serious injury is such physical injury as causes great pain and suffering.

A similar instruction was given in regard to Mr. Hill and his injuries.

Where all the evidence tends to show that the accused committed the crime charged, and there is no evidence of guilt of a lesser included offense, the court is correct in refusing to charge the jury on the unsupported lesser offense. *State v. Redfern*, 291 N.C. 319, 321, 230 S.E. 2d 152, 153 (1976). Defendant does not contend that the injuries did not constitute serious bodily injury; he merely contends that the evidence of the injuries was insufficient to show serious bodily injury *as a matter of law.* However, the question presented by this assignment of error is not whether the evidence was sufficient to show serious bodily injury as a matter of law. Rather, the question is whether the State has produced positive evidence as to each and every element of the crime charged. *State v. Harvey*, 281 N.C. 1, 187 S.E. 2d 706 (1972). Where there is evidence in support of each element, it is appropriate to submit the charge including serious bodily injury to the jury.

Uncontradicted evidence showed that both victims were shot with a gun; that their injuries required immediate hospitalization; that each required subsequent surgery; that each was unable to return to work for some time due to their injuries; and that each suffered substantial pain and experienced at least temporary physical impairment. In *State v. Whitted*, 14 N.C. App. 62, 187 S.E. 2d 391 (1972), the State's evidence showed that the victim was shot in the abdomen with a pistol and blacked out; that he was immediately hospitalized; that he was subsequently read-mitted to the hospital for surgery to repair damage caused by the bullet; that he was unable to walk by the time of the trial; and that his impairment was not necessarily permanent. *Id.* at 63, 187 S.E. 2d at 392. This Court found that although the trial court refused to rule that the injury was serious bodily injury as a mat-ter of law, the question should have been submitted to the jury. In the case *sub judice*, where the injuries were very similar to those in *Whitted*, the question of serious bodily injury was cor-rectly submitted to the jury. Moreover, defendant explicitly con-cedes that "the evidence of injuries . . . in this case was sufficient to submit the question of whether the injuries constitutes (sic) 'serious bodily injury' to the jury." Accordingly, we find no merit to defendant's assignment of error.

## III

[3] Finally, defendant assigns error to the trial judge's failure to find as a mitigating factor that the defendant, at the time of the offense, "was suffering from a mental or physical condition that was insufficient to constitute a defense but significantly reduced his culpability for the offense." G.S. 15A-1340.4(a)(2)(d).

At the sentencing hearing, defendant introduced evidence that four to five months *prior* to the offense defendant was taking drugs and that exactly one month *after* the offense, tests by a drug rehabilitation center indicated that defendant had a substan-tial heroin and cocaine "habit." The State did not dispute this evidence. The trial judge found no mitigating factors and one ag-gravating factor and sentenced defendant to twenty-eight years of imprisonment for the attempted armed robbery conviction. The presumptive term for attempted armed robbery, a Class D felony, is twelve years. G.S. 15A-1340.4(f)(2); G.S. 14-87.

Where evidence in support of a mitigating factor is uncontradicted, substantial and inherently credible, it is error for the trial court to fail to find that mitigating factor. *State v. Jones*, 309 N.C. 214, 306 S.E. 2d 451 (1983); *State v. Winnex*, 66 N.C. App. 280, 311 S.E. 2d 594 (1984). The defendant has the burden of establishing mitigating factors by a preponderance of the evidence. *State v. Jones, supra; State v. Hinnant*, 65 N.C. App. 130, 308 S.E. 2d 732 (1983). He must convince the court that not only is the evidence uncontradicted, but also that " 'no reasonable inference to the contrary can be drawn,' and that the credibility of the evidence 'is manifest as a matter of law.' " *State v. Jones, supra*, at 220, 306 S.E. 2d at 455, *citing North Carolina National Bank v. Burnette*, 297 N.C. 524, 536-537, 256 S.E. 2d 388, 395 (1979).

Uncontradicted evidence tended to show that defendant used drugs several months prior to the offense and had a heroin and cocaine "habit" just one month after the offense. Although defendant presented no evidence of drug use *at the time of the offense*, the trial court could have inferred from the fact of the prior and subsequent use of addictive drugs that defendant was under the influence of drugs at the time of the offense and was attempting to rob Ms. Bordonaro to support his drug habit. Nevertheless, defendant presented no evidence demonstrating that his culpability for this offense was reduced due to his drug habit.

In *State v. Salters*, 65 N.C. App. 31, 308 S.E. 2d 512 (1983), uncontradicted, credible evidence showed that the defendant was an alcoholic. However, the defendant did not allege or prove that his alcoholism in any way reduced his culpability for the offense. The court found that while a mental or physical condition may be capable of reducing a defendant's culpability for an offense, evidence that the condition exists, without more, does not mandate consideration as a mitigating factor pursuant to G.S. 15A-1340.4(a)(2)(d). *Id.* at 36, 308 S.E. 2d at 516. In *Salters*, the court concluded that the defendant failed to establish the essential link between defendant's condition and his culpability for the offense. Therefore, the trial judge was not required to consider the condition as a mitigating factor. *Id.* This principle applies equally to drug use in the case *sub judice*. We find sufficient evidence in the record for the trial court to have concluded that defendant failed

to meet the burden of proof necessary for a finding that drug use significantly reduced his culpability for the offense. The balance struck by the trial judge will not be disturbed if there is significant support in the record for the sentencing determination. *State v. Davis*, 33 N.C. App. 262, 234 S.E. 2d 762 (1977). Therefore, it was not error for the trial judge to fail to find drug use as a mitigating factor.

For the above reasons, we find no merit to defendant's assignments of error. The judgment appealed from is

Affirmed.

Judges ARNOLD and PHILLIPS concur.