STATE OF NORTH CAROLINA v. BOBBY GENE BARE

No. 8423SC1279

(Filed 29 October 1985)

1. **Constitutional Law § 51— delay between indictment and trial—no denial of constitutional right to speedy trial**

    Defendant was not denied his constitutional right to a speedy trial by a nine and one-half month delay between his indictment and trial where defendant failed to show that the delay was unreasonable, the result of the State's negligence or prejudicial to defendant's defense. Sixth and Fourteenth Amendments to the U. S. Constitution; Art. I, § 18 of the N. C. Constitution.

State v. Bare

2. **Criminal Law § 91— deadline for trial to begin—order controls over transcript**

   The trial court's signed order rather than the transcript controlled in determining that the trial court intended to set the deadline for defendant's trial to begin at the "July Term" rather than on the "9th of July" for speedy trial purposes. G.S. 15A-703(a).

3. **Criminal Law § 91— continuance because of unavailable prosecution witnesses —exclusion of time from speedy trial period**

   The trial court properly granted a continuance to the State and properly excluded the time of the continuance from the statutory speedy trial period under either G.S. 15A-701(b)(3) or (7) when two witnesses failed to arrive from California and were unavailable because they were afraid after having received threatening telephone calls, where the State had been in contact with the witnesses, paid for and arranged for their trip to North Carolina, forwarded airline tickets to them and sent the sheriff to the airport to meet them, and where the State had no prior reason to attempt to compel the presence of the witnesses because they had been cooperative until they received the threatening telephone calls.

4. **Homicide § 30.2— failure to instruct on voluntary manslaughter—insufficient evidence of heat of passion on sudden provocation**

   There was no evidence in this murder case that defendant acted in the heat of passion on sudden provocation so as to require the trial court to instruct on voluntary manslaughter where the State's evidence did not show that defendant shot the victim only after being provoked; defendant's testimony that the victim used one vulgar phrase, told defendant, "We're not leaving until we take what we came after," and stated, "Punk, show me you've got a gun," did not indicate that the victim threatened defendant; and the only testimony as to the reason defendant pulled the trigger was defendant's own testimony that the gun discharged by accident when the victim grabbed for it.

5. **Criminal Law § 138— mitigating circumstances—compulsion—provocation and extenuating relationship—insufficient evidence**

   The trial court did not err in failing to find as mitigating circumstances for second degree murder that the crime was committed under compulsion and that there was provocation by the victim and an extenuating relationship between defendant and the victim where defendant's evidence showed only that defendant was in a state of emotional turmoil and was trying to keep his baby from being taken away from him by his former girlfriend's mother and the victim, and that the victim challenged defendant to produce the shotgun he said he had; defendant testified at the sentencing hearing that the shooting of the victim was an accident; and there was no evidence that the victim displayed or threatened to display a weapon. G.S. 15A-1340.4(a)(2)b, i, m.

APPEAL by defendant from *Rousseau, Judge.* Judgment entered 26 July 1984 in Superior Court, ASHE County. Heard in the Court of Appeals 29 August 1985.

State v. Bare

*Attorney General Lucy H. Thornburg, by Assistant Attorney General Steven F. Bryant, for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender Gordon Widenhouse, for defendant appellant.*

BECTON, Judge.

Defendant, Bobby Gene Bare, and Yolanda Cooley had a daughter, Winter Bare, in February 1983. In August 1983, they were living in Ashe County, North Carolina, when Yolanda signed papers making defendant the legal guardian of Winter Bare; Yolanda then moved to Kentucky to work for the Job Corps. Defendant stayed in contact with Yolanda, tried to convince her to move back to North Carolina and proposed marriage, but Yolanda declined. In October 1983, Yolanda traveled to Ashe County with her mother, Laticia Cooley, and her mother's boyfriend, Matthew Anderson. When they arrived in Ashe County, they sought the help of the sheriff in taking the baby, Winter Bare, from the defendant. The sheriff advised them to get a court order. Yolanda contacted defendant, met with him at the defendant's father's home, and indicated that she wanted her mother (Laticia Cooley) to take the baby to California. Defendant strongly opposed the idea of Laticia and her boyfriend taking the baby, and defendant took a rifle and the baby to his sister's house.

At his sister's house, defendant asked his brother-in-law if he could borrow a gun. Defendant started to leave in his car, but a van was at the end of the driveway with Laticia and Matthew Anderson in the front seat. At trial, Laticia testified in part as follows: She approached defendant's car and noticed a gun next to his seat. She asked, "What's going on? Where's the baby?" Defendant said no one would take his baby, and Laticia returned to the van. She heard a gunshot and saw Anderson's face covered with blood. Defendant then threatened to shoot her, but defendant's father came and took the gun from defendant without resistance.

According to defendant's testimony, Anderson had taunted and threatened defendant, told defendant to show Anderson the shotgun, and grabbed the barrel of the shotgun when defendant produced it. Defendant claims the gun discharged by accident when Anderson grabbed it. Apparently, defendant asserts, in the

State v. Bare

alternative, that Anderson provoked defendant into firing the gun.

Defendant was convicted of second degree murder and was sentenced to fifty years imprisonment. On appeal, defendant asserts that the trial judge erred by (1) denying defendant's motion to dismiss for the State's failure to provide a speedy trial; (2) failing to instruct the jury on the charge of voluntary manslaughter; and (3) failing to find certain statutory mitigating factors supported by the evidence. We find no error.

I

[1]  Defendant contends that he .was denied a speedy trial on both constitutional and statutory grounds. The Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sec. 18 of the North Carolina Constitution guarantee the right to a speedy trial. In *Barker v. Wingo*, 407 U.S. 514, 33 L.Ed. 2d 101, 92 S.Ct. 2182 (1972), the United States Supreme Court set forth the factors to consider in determining whether a trial has been unconstitutionally delayed: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his rights; and (4) the prejudice to the defendant. *State v. Jones*, 310 N.C. 716, 314 S.E. 2d 529 (1984). These factors were adopted as the standard under North Carolina constitutional law. *See id.; State v. Smith*, 289 N.C. 143, 221 S.E. 2d 247 (1976) and cases cited therein.

The length of a delay is not determinative of whether a violation has occurred. *Jones*, 310 N.C. at 721, 314 S.E. 2d at 533. The issue must be resolved on the facts of each case, and the defendant has the burden of establishing "that the delay was purposeful or oppressive or by reasonable effort could have been avoided by the State." *Smith*, 289 N.C. at 148, 221 S.E. 2d at 250.

> The right to a speedy trial is necessarily relative, for inherent in every criminal prosecution is the probability of delay. . . . Undue delay which is arbitrary and oppressive or the result of deliberate prosecution efforts "to hamper the defense" violates the constitutional right to a speedy trial.

*Id.* (citation omitted); *see Jones* (delay of seven months not *per se* unreasonable or prejudicial); *State v. Hill*, 287 N.C. 207, 214 S.E.

2d 67 (1975) (delay of twenty-two months not of great significance; merely triggered speedy trial issue).

Defendant has failed to show that the delay in this case was unreasonable, the result of the State's negligence or prejudicial to defendant's defense. The delay was approximately nine and one-half months. The Ashe County Criminal Superior Court only has three regular sessions each year — March, July and October. Defendant was indicted on 10 October 1983. At the March 1984 session, the State moved for a continuance because two essential witnesses failed to arrive from California. The State had been in contact with the witnesses, paid for and arranged their trip to North Carolina, forwarded the airline tickets to them and sent the sheriff to the airport to meet them. They did not show up because they had received threatening telephone calls and were fearful. This does not amount to wilful or negligent action by the State. *See State v. Marlow*, 310 N.C. 507, 313 S.E. 2d 532 (1984). And although defendant was incarcerated before trial, bail was set (even though he was charged with first degree murder), and defendant has not shown any prejudice to his defense as a result of this incarceration.

Defendant also contends that his statutory right to a speedy trial under N.C. Gen. Stat. Secs. 15A-701 and -702 (1983) was violated. G.S. Sec. 15A-701 provides in part:

> (a1) The trial of the defendant charged with a criminal offense shall begin within the time limits specified below:
>
> (1) Within 120 days from the date the defendant is arrested, served with criminal process, waives an indictment, or is indicted, whichever occurs last.

G.S. Sec. 15A-702 provides that in counties with limited numbers of court sessions, a defendant not brought to trial within the time specified by G.S. Sec. 15A-701 may petition the court for a prompt trial, and then, "(b) The judge with whom the petition for prompt trial is filed may order the defendant's case be brought to trial within not less than 30 days." This order is discretionary with the trial court. *See State v. Parnell*, 53 N.C. App. 793, 281 S.E. 2d 732 (1981).

[2] Defendant asserts two arguments regarding the statutory speedy trial requirements. First, because the trial court ordered a

prompt trial to begin on 9 July 1984, and the trial began on 23 July 1984, the charge against defendant must be dismissed under N.C. Gen. Stat. Sec. 15A-703(a) (1983). As defendant points out, the transcript indicates that the court ordered "that the case be set for trial in the month of July 1984, for a two week term beginning the 9th of July, 1984." As the State points out, the record shows the court ordered that the time be excluded for the period from 19 March 1984 through the "July Term 1984." It is not clear whether the trial court intended to set the deadline for the trial to begin as the "9th of July" or the "July Term." It was clearly a discretionary order, *see Parnell*, and we conclude that the signed Order, rather than the transcript, controls, thus excluding the time through the "July Term 1984."

[3]   Defendant's second contention under the speedy trial statute is that the time period from 19 March through 23 July 1984 was improperly excluded under G.S. Sec. 15A-701(b)(3)(b), which provides:

> (b) The following periods shall be excluded in computing the time within which the trial of a criminal offense must begin:

> \*    \*    \*

> (3) Any period of delay resulting from the absence or unavailability of the defendant or an essential witness for the defendant or the State. For the purpose of this subdivision, a defendant or an essential witness shall be considered

> \*    \*    \*

> (b) Unavailable when his whereabouts are known but his presence for testifying at the trial cannot be obtained by due diligence or he resists appearing at or being returned for trial.

The trial court apparently excluded the time pursuant to G.S. Sec. 15A-701(b)(7):

ORDER

> Considering the factors set forth in G.S. 15A-701(b)(7), the Court finds as a fact that the ends of justice served by granting the continuance outweigh the best interests of the

public and defendant in a speedy trial and therefore grants the continuance for the reasons above. The Court orders that the following time be excluded in determining whether a trial has been held within the time limits established by G.S. 15A-701.

| Time Period (From) | March 19, 1984 |
| Time Period (Through) | July Term 1984 |

In *Jones*, 310 N.C. at 719, 314 S.E. 2d at 531, the Supreme Court, quoting G.S. Sec. 15A-701(b)(7), noted that time is properly excluded as long as the judge who grants the continuance finds that "the ends of justice served by granting the continuance outweigh the best interests of the public and the defendant in a speedy trial and sets forth in writing in the record of the case the reasons for so finding." The Court then went on to examine the continuances granted to the State.

We conclude that there was no error in granting the continuance to the State because two witnesses were unavailable. As mentioned above, the State had no reason prior to the March trial date to attempt to compel the presence of the witnesses because they had been cooperative until they received threatening telephone calls. The State had paid for two airline tickets, forwarded them to the witnesses, and maintained contact with them. A sheriff was sent to the airport to pick them up. The record supports the exclusion of time under either G.S. Sec. 15A-701(b)(3) or (7). We find no error in the trial court's order. *See State v. Melton*, 52 N.C. App. 305, 278 S.E. 2d 309 (1981).

II

[4] Defendant contends that the trial court erred by failing to instruct the jury on the lesser included offense of voluntary manslaughter. Defendant argues that the evidence supports an inference that he had acted under the emotional strain of facing the loss of his child and the rejection of the woman he wanted to marry. Defendant claims that the facts were sufficient to show heat of passion on sudden provocation and to entitle him to the instruction on voluntary manslaughter. *See State v. Montague*, 298 N.C. 752, 259 S.E. 2d 899 (1979). In order to succeed on this theory, there must be evidence that (1) defendant shot Mr. Anderson in the heat of passion; (2) defendant's passion was sufficiently

provoked; and (3) defendant did not have sufficient time for his passion to cool off. *State v. Robbins*, 309 N.C. 771, 309 S.E. 2d 188 (1983). These elements may be shown by defendant's own or by the State's evidence. *Id.*

The defendant did not satisfy this burden. There is no evidence that the defendant acted in the heat of passion on sudden provocation sufficient under the law in this State. First, the State's evidence does not show that the defendant shot Anderson only after being provoked. The State's eyewitness said only that defendant shot Anderson. Second, defendant's testimony does not, as defendant asserts, indicate that Anderson threatened defendant. Defendant testified only that Anderson used one vulgar phrase; said to defendant, "We're not leaving until we take what we came after"; and responded to defendant's warning that defendant had a gun by saying, "Punk, show me you've got a gun." Finally, and more importantly, the only testimony as to the reason defendant pulled the trigger was defendant's own testimony that the gun discharged by accident when Anderson grabbed for it. In *Montague*, the Supreme Court discussed the legal implications of such evidence:

> Mere words however abusive are not sufficient provocation to reduce second-degree murder to manslaughter. Legal provocation must be under circumstances amounting to an assault or threatened assault. *State v. Watson*, 287 N.C. 147, 214 S.E. 2d 85 (1975).
>
> . . . The State's evidence does not permit a reasonable inference that the killings resulted from such provocation as would temporarily dethrone reason and displace malice. Defendant's evidence tended to show that he did not *intentionally* assault anyone with a deadly weapon and if anyone was fatally injured by the use of his weapon, it was accidental or at most the injury proximately resulted from his culpable negligence. Therefore, defendant's evidence, if believed, would support a verdict of not guilty by reason of accident or a verdict of involuntary manslaughter, both of which were properly submitted by the trial judge. His evidence was not consistent with a mitigation of second-degree murder to voluntary manslaughter on the ground that he acted under the influence of heat of passion upon sudden provocation.

298 N.C. at 757, 259 S.E. 2d at 903.

We conclude that, notwithstanding defendant's then-existing state of emotional distress, the evidence produced at trial was insufficient to show legal provocation.

### III

[5] Defendant's final exceptions are to the trial court's failure to find certain statutory mitigating factors, to wit: (1) the offense was committed under compulsion; (2) there was provocation by the victim and an extenuating relationship between defendant and victim; and (3) the defendant showed good character and reputation. *See* N.C. Gen. Stat. Sec. 15A-1340.4(a)(2)b, i, m (1983).

The defendant has the burden of proving mitigating factors by a preponderance of the evidence, and a trial court must find a factor in mitigation if it is supported by "uncontroverted, substantial and inherently credible" evidence. *State v. Grier*, 70 N.C. App. 40, 48, 318 S.E. 2d 889, 894-95 (1984); *see State v. Jones*, 309 N.C. 214, 220, 306 S.E. 2d 451, 456 (1983); *see State v. Monroe*, 70 N.C. App. 462, 320 S.E. 2d 14 (1984). On the other hand, should the defendant fail to produce such evidence, the trial judge may reject the proposed factors. *Monroe*.

As an initial matter, we note that the trial court did find as a mitigating factor the defendant's good character and reputation, but determined that, in its discretion, the aggravating factor outweighed the mitigating factor. This was soundly within the court's discretion. *Jones*.

Defendant's evidence of compulsion, provocation or an extenuating relationship apparently is that he was in a state of emotional turmoil, trying to protect his baby from his mother-in-law's boyfriend, who provoked defendant by challenging him to produce the shotgun. We fail to see how defendant can maintain on appeal that this evidence is uncontradicted and inherently credible when, at the sentencing hearing, he testified:

> The only thing I can say is it was an accident that happened. Words can never express the remorse that I feel for the pain and trauma that I've caused, but, so help me God, it was an accident. That's the only thing I've got to say.

Moreover, the testimony of defendant failed to establish that the victim threatened or challenged the defendant within the meaning of the statute. Anderson neither displayed nor threatened to display a weapon. In fact, defendant testified that he told Anderson that defendant had a gun in his car; this suggests that, perhaps, the defendant threatened or challenged the victim. *See State v. Taylor*, 309 N.C. 570, 308 S.E. 2d 302 (1983); *see also State v. Hinnant*, 65 N.C. App. 130, 308 S.E. 2d 732 (1983) (trial court did not err in not finding compulsion when credibility questionable due in part to subjective nature of testimony and defendant's interest in mitigation) *cert. denied*, 310 N.C. 310, 312 S.E. 2d 653 (1984); *State v. Michael*, 311 N.C. 214, 316 S.E. 2d 276 (1984) (father/son relationship not necessarily sufficient to prove extenuating relationship, even when father had argued with and had hit son the night before the crime); *State v. Puckett*, 66 N.C. App. 600, 312 S.E. 2d 207 (1984) (evidence that defendant was upset over recent breakup with girlfriend was insufficient; Fair Sentencing Act not intended to provide lighter sentences for those motivated by jealous rage).

For the reasons set forth above, we find

No error.

Judges WEBB and MARTIN concur.