An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-339

NORTH CAROLINA COURT OF APPEALS

Filed: 21 October 2014

STATE OF NORTH CAROLINA

v.                                        Davie County
                                          No. 11 CRS 050117
LARRY THOMAS MCGEE


Appeal by defendant from order entered 11 October 2013 by Judge J. Lynn Gullet and judgment entered 11 October 2013 by Judge Theodore S. Royster, Jr. in Davie County Superior Court. Heard in the Court of Appeals 10 September 2014.

> *Attorney General Roy Cooper, by Special Deputy Assistant Attorney General Neil Dalton, for the State.*

> *Kevin P. Bradley, for defendant.*


ELMORE, Judge.


Larry Thomas McGee (defendant) appeals from an order denying his pre-trial motion to suppress all evidence obtained as the result of an unlawful seizure. Defendant preserved the denial of his pre-trial motion for appellate review by timely objecting to the admission of such evidence at trial. Defendant

also appeals from judgment entered following his conviction for driving while impaired (DWI), which ordered that he serve twelve months of imprisonment, suspended, and be placed on eighteen months of supervised probation. After careful consideration, we affirm the pre-trial order and hold that defendant received a trial free from prejudicial error.

## I. Facts

On 30 January 2011, defendant was charged with DWI by Trooper Whitener of the North Carolina State Highway Patrol. The case proceeded to trial in Davie County District Court (District Court), and defendant was found guilty after a bench trial. Defendant appealed his conviction to Davie County Superior Court (Superior Court) and filed a motion to suppress evidence as a result of an unreasonable seizure and asserted his right to a speedy trial by filing a motion to dismiss based on a denial of his constitutional right to a speedy trial.

During the suppression hearing, defendant's sister, Dana Conrad, testified that she had previously recorded Trooper Whitener's entire testimony during the District Court trial on a smartphone. Defendant offered the recording into evidence for the purpose of refreshing Trooper Whitener's recollection and to impeach his testimony, but the State objected. Judge J. Lynn

Gullet sustained the State's objection, ruling that defendant failed to sufficiently authenticate the recording.

Conrad also testified that on the night of defendant's arrest, she recorded a video of Trooper Whitener conducting field sobriety tests on defendant. Defendant attempted to offer the video into evidence, over the State's objection, to impeach Trooper Whitener's testimony. Judge Gullet again sustained the State's objection and refused to admit the video. After all of the evidence was presented on the motion to suppress, Judge Gullet denied defendant's motion. She also denied defendant's motion to dismiss for lack of a speedy trial.

## II. Analysis

### a.) Constitutional Violation

Defendant first contends that he was denied a fair suppression hearing because Judge Gullet's refusal to admit the audio and video recordings into evidence violated his sixth amendment constitutional right to confront his accuser and adverse witnesses. We dismiss this argument on appeal.

N.C. Appellate Procedure Rule 10(a)(1) mandates that "[i]n order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party

desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(a)(1). Accordingly, "where a theory argued on appeal was not raised before the trial court, the law does not permit parties to swap horses between courts in order to get a better mount in the reviewing court." *State v. Ellis*, 205 N.C. App. 650, 654, 696 S.E.2d 536, 539 (2010) (citations and quotation marks omitted). This general rule applies to constitutional questions, as constitutional issues not raised before the trial court "will not be considered for the first time on appeal." *Id.* (citation omitted).

During the pre-trial motion to suppress, defendant argued that the recordings should be admitted because they were sufficiently authenticated. At no point did defendant contend that his constitutional rights would be violated as a result of Judge Gullet's refusal to consider the recordings. Thus, defendant has not preserved this issue on appeal, and we dismiss this argument. *See id.* (dismissing the defendant's argument on appeal that his constitutional rights were violated by the trial court's denial of his motion to continue because the "[d]efendant's argument to the trial court was limited to the issue of obtaining an expert witness on identification").

**b.) Audio Recording**

Next, defendant argues that Judge Gullet committed prejudicial error in ruling that the audio recording of Trooper Whitener's trial testimony in District Court was inadmissible during the motion to suppress in Superior Court. We disagree.

We review this issue *de novo* because Judge Gullet refused to admit the audio recording into evidence on the basis that it was not properly authenticated. *See State v. Crawley*, 217 N.C. App. 509, 515, 719 S.E.2d 632, 637 (2011) ("A trial court's determination as to whether a document has been sufficiently authenticated is reviewed *de novo* on appeal as a question of law.").

Pursuant to North Carolina Rule of Evidence 901, "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." N.C. Gen. Stat. § 8C-1, Rule 901(a) (2013). All that is required to authenticate an audio tape recording is "[a] witness' testimony as to the identity of the declarant based on personal knowledge[.]" *State v. Mobley*, 206 N.C. App. 285, 289, 696 S.E.2d 862, 865 (2010) (citations and quotation marks omitted).

Here, it was established that Conrad had a smartphone capable of making an audio and video recording. Thereafter, the following colloquy occurred between defendant's attorney and Conrad in an attempt to authenticate the audio recording.

Q. DID YOU HAVE OCCASION TO ATTEND YOUR BROTHER'S DISTRICT COURT TRIAL IN THIS MATTER?

A. YES, SIR.

Q. AND WHEN YOU ATTENDED YOUR YOUNGER BROTHER'S DISTRICT COURT TRIAL IN THIS MATTER, DID YOU HAVE AN AUDIO RECORDING DEVICE IN YOUR POSSESSION?

A. YES, SIR.

Q. WAS IT THE SMART PHONE OR SOMETHING ELSE?

A. IT WAS THE SMART PHONE, I BELIEVE, YES.

Q. AND DID YOU MAKE AN AUDIO TAPE OF THE DISTRICT COURT TRIAL?

A. YES, I DID.

Q. AND SPECIFICALLY DID YOU MAKE AN AUDIO TAPE OF THE TESTIMONY OF THE STATE TROOPER AT THAT TRIAL?

A. YES, SIR.

Q. DID YOU RECORD THE ENTIRE QUESTIONS AND ANSWERS OF HIM BY THE PROSECUTING ATTORNEY AND BY HIS DEFENSE ATTORNEY?

A. YES, SIR.

Q. AND JUST FOR THE RECORD, DO YOU KNOW THE IDENTITY OR DO YOU KNOW THE IDENTITY OR NAME

OF MR. MCGEE'S DEFENSE ATTORNEY IN THE DISTRICT COURT?

A. I BELIEVE IT WAS -- HE GOES BY CHUCK ALEXANDER, BUT CHARLES ALEXANDER, YES, SIR.

Q. AND AFTERWARDS, DID YOU HAVE OCCASION TO REVIEW THE AUDIO RECORDING OF THE QUESTIONS AND ANSWERS AT THE DISTRICT COURT TRIAL?

A. YES, SIR.

Q. NOW, DO YOU HAVE WITH YOU THE CAPABILITY OF SHOWING THE COURT THE AUDIO -- STRIKE THAT -- SHOWING THE COURT THE VIDEO . . . AND ALSO PLAYING THE AUDIO?

A. YES.

Q. ALL RIGHT. THE DEVICE YOU HAVE TO DO THAT IS A COMPUTER?

A. YES.

Q. HAVE YOU TESTED THE COMPUTER TO SEE IF IT COULD PLAY THESE ITEMS?

A. AS OF A FEW MINUTES AGO IT WAS STILL WORKING. YES. I HAVE TESTED IT.

Q. OKAY.

. . .

Q. FIRST OF ALL, THE VIDEO, IS THAT ACTUALLY INSIDE THE COMPUTER OR DO YOU HAVE IT SO YOU CAN HAVE IT IN YOUR HANDS?

A. AS OF RIGHT NOW IT'S INSIDE THIS COMPUTER (INDICATING).

Q. WHAT ABOUT THE AUDIO TAPE?

A. YES. IT IS ALSO INSIDE THAT COMPUTER.

Defendant then moved to admit the audio recording into evidence.

Conrad's testimony shows that she attended defendant's District Court trial, heard all of Trooper Whitener's testimony, recorded his testimony on a smartphone, reviewed the audio recording, and was able to play the recording through her computer. Thus, defendant properly authenticated the audio recording as a matter of law. *See State v. Baker*, 112 N.C. App. 410, 418, 435 S.E.2d 812, 817 (1993) (holding that a party met its burden of authentication because two witnesses "identified the tape and listened to it, testifying that the tape was a fair and accurate recordation of the conversation they held with defendant"); *see also State v. Stager*, 329 N.C. 278, 317, 406 S.E.2d 876, 898 (1991) ("The testimony of the four witnesses that the tape recording contained the voice of [defendant] was sufficient to meet the . . . burden of authentication under Rule 901.").

Although Judge Gullet erred by failing to admit the audio recording on the basis of insufficient authentication, defendant must still show that the error was prejudicial. *See State v. Chavis*, 141 N.C. App. 553, 566, 540 S.E.2d 404, 414 (2000) ("The erroneous admission of evidence requires a new trial only when

the error is prejudicial."). Other than constitutional errors, an error is prejudicial "when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." *Ellis*, 205 N.C. App. at 657-58, 696 S.E.2d at 541 (citation and internal quotation marks omitted).

Even though Judge Gullet failed to admit the audio recording into evidence, defendant cross-examined Trooper Whitener about the inconsistencies between his testimony in District Court and testimony provided during the motion to suppress in Superior Court. Moreover, defendant's attorney questioned Conrad about Trooper Whitener's testimony in District Court, including his testimony regarding defendant's location when he arrived on the scene and where the patrol cars were parked.

Thus, in lieu of the audio recording, defendant had the opportunity to elicit similar impeachment evidence through Trooper Whitener's cross-examination and Conrad's testimony. As such, we hold that defendant failed to show prejudicial error in Judge Gullet's failure to admit the audio recording.

**c.) Video Recording**

Defendant also argues that Judge Gullet committed prejudicial error by failing to admit the video recording into evidence. We disagree.

In light of the analysis above pertaining to the audio recording, even if Judge Gullet erred in failing to admit the video recording into evidence, such error was not prejudicial. Conrad testified in detail as to the very issues defendant sought to bring to Judge Gullet's attention through the video—Trooper Whitener's administration of the field sobriety tests and defendant's ability to walk without swaying. Specifically, Conrad testified that Trooper Whitener's testimony about his administration of the horizontal gaze nystagmus test was inaccurate because he

> said he held his finger for four seconds on each side twice. That did not happen. It might have happened one time for a full four seconds[.] . . . [O]ne of the things I noticed about his testimony was that he said he specifically is looking for eye movements and jerking. And when my brother, when he put his finger here (indicating), he went like this (demonstrating) or more up like this (demonstrating), which would have made someone jerk their eyes.

Conrad further stated that "[w]here they took him to do the other test, there wasn't very much lighting where he would need to walk to see." She also testified that defendant walked

without swaying, and contrary to Trooper Whitener's testimony, defendant only lost his balance once during the walk-and-turn field sobriety test. Thus, defendant impeached Trooper Whitener's testimony without the video recording. Any error by Judge Gullet in her failure to admit the video recording into evidence was not prejudicial.

**d.) Speedy Trial**

Lastly, defendant argues that the State violated his constitutional right to a speedy trial. We disagree.

"The standard of review for alleged violations of constitutional rights is *de novo*." *State v. Graham*, 200 N.C. App. 204, 214, 683 S.E.2d 437, 444 (2009), *appeal dismissed and disc. review denied,* 363 N.C. 857, 694 S.E.2d 766 (2010); *see also Piedmont Triad Reg'l Water Auth. v. Sumner Hills Inc.*, 353 N.C. 343, 348, 543 S.E.2d 844, 848 (2001) ("[D]e novo review is ordinarily appropriate in cases where constitutional rights are implicated.").

"The right of every person formally accused of crime to a speedy and impartial trial is secured by the fundamental law of this State and guaranteed by the Sixth Amendment to the federal constitution, made applicable to the State by the Fourteenth Amendment." *State v. McKoy*, 294 N.C. 134, 140, 240 S.E.2d 383,

387-88 (1978) (citations omitted). The only remedy for a denial of the right to a speedy trial is a dismissal of the criminal charges. *Id*. at 140, 240 S.E.2d at 388. In reviewing a defendant's claim that the State denied his constitutional right to a speedy trial, this Court uses "a balancing test in which the court weighs the conduct of both the prosecution and the defendant." *Id*. We must consider four factors: "(1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his rights; and (4) the prejudice to the defendant." *State v. Bare*, 77 N.C. App. 516, 519, 335 S.E.2d 748, 750 (1985) (citation omitted). "The length of a delay" factor alone "is not determinative of whether a violation has occurred." *Id*. (citation omitted). Instead, the "issue must be resolved on the facts of each case, and the defendant has the burden of establishing that the delay was purposeful or oppressive or by reasonable effort could have been avoided by the State." *Id*. (citations and quotation marks omitted).

We now address each of the four factors to determine whether defendant's right to a speedy trial was violated.

1. Length of the Delay

We must first determine the relevant time period of delay. This Court has held that when a defendant has a trial in

District Court but fails to file a motion for a speedy trial, "the time for computing the delay runs from his appeal from District Court to Superior Court . . . until his trial in Superior Court[.]" *State v. Friend*, ___ N.C. App. ___, ___, 724 S.E.2d 85, 90 (2012), *writ denied*, *review denied*, *appeal dismissed*, 366 N.C. 402, 735 S.E.2d 188 (2012). We only analyze the three remaining factors "[i]f the length of delay approaches one year[.]" *Id*.

Here, defendant never filed a speedy trial motion in District Court, was found guilty of DWI after a trial in District Court, gave notice of appeal from his District Court conviction on 19 March 2012, and his trial in Superior Court commenced on 8 October 2013. Thus, his right to a speedy trial was delayed almost nineteen months. However, this delay does not result in an automatic determination that defendant's right to a speedy trial was violated. *See State v. Webster*, 337 N.C. 674, 678, 447 S.E.2d 349, 351 (1994) ("The length of the delay is not *per se* determinative of whether a speedy trial violation has occurred."). Rather, the delay triggers our consideration of the remaining three factors. *See Friend*, *supra*.

2.) Reasons for the Delay

Under the second factor, defendant carries the burden to establish that "the delay was caused by the neglect or willfulness of the State." *Friend*, ___ N.C. App. at ___, 724 S.E.2d at 90 (citation and internal quotation marks omitted).

Upon review of the transcript, record, and Judge Gullet's findings of fact, the reasons for delay were not a result of prosecutorial neglect or willfulness. Defendant did not obtain an attorney of record until 22 May 2012, approximately two months after defendant gave notice of appeal to Superior Court. The State provided discovery to defendant on 4 June 2012, the next available term of Superior Court. Davie County Criminal Superior Court is generally only held once every other month. After defendant indicated his intent to file pre-trial motions, the State waited before calendaring the matter for trial. Such action was a valid reason for delay because if Judge Gullet granted defendant's motion, it would have been dispositive to the case's outcome. *See State v. Hammonds*, 141 N.C. App. 152, 160, 541 S.E.2d 166, 173 (2000) *aff'd*, 354 N.C. 353, 554 S.E.2d 645 (2001) ("The constitutional guarantee does not outlaw good-faith delays which are reasonably necessary for the State to prepare and present its case[.]").

Defendant filed a pre-trial motion to suppress and a motion to dismiss on 7 January 2013, six months after indicating his intent to conduct motions pre-trial, and the State immediately calendared those motions for hearing, but they were not reached due to other pending trials. The pre-trial motions were finally heard during the 22 July 2013 session of Superior Court, and after Judge Gullet denied each of defendant's motions, the State calendared the matter for trial. The record also indicates that defendant's attorney filed a designation of secured leave, indicating that he would be unavailable for any Superior Court proceeding for three calendar weeks from 29 July 2013 until 16 August 2013.

Thus, defendant failed to establish that the delay was a result of the State's negligence or willfulness in light of the various reasons for the delay, including defendant's contribution to the delay and the limited sessions of criminal Superior Court in Davie County.

3.) Defendant's assertion of his rights

It is well established that a "defendant's failure to assert his right to a speedy trial sooner in the process does not foreclose his speedy trial claim, but does weigh against his contention that he has been denied his constitutional right to a

speedy trial." *Hammonds*, 141 N.C. App. at 162, 541 S.E.2d at 174 (citations and internal quotation marks omitted). For this factor, we "presume that the delay is computed from the filing of the initial charge[.]" *Friend*, __ N.C. App. at __, 724 S.E.2d at 90.

Here, defendant asserted his speedy trial right on 25 July 2013 when he filed a motion to dismiss for lack of a speedy trial. He concedes that up until the filing of that motion he had not "affirmatively assert[ed] his speedy trial right in this case[.]" Defendant was charged with DWI on 30 January 2011, over two years and six months before he asserted his speedy trial right. Thus, this third factor weighs against him.

4.) Prejudice to Defendant

Defendant carries the burden to prove prejudice resulting from the delay of his trial. *Hammonds*, 141 N.C. App. at 163, 541 S.E.2d at 175. We determine whether defendant was prejudiced by the delay of his trial by analyzing whether defendant experienced oppressive pre-trial incarceration, anxiety and concern, and impairment to his defense. *State v. Washington*, 192 N.C. App. 277, 291, 665 S.E.2d 799, 808 (2008) (citation omitted). Of these three considerations, "the most serious is the last, as the inability of a defendant adequately

to prepare his case skews the fairness of the entire system." *Id.* (citation and quotation marks omitted). We also note that "the need to demonstrate prejudice diminishes as the egregiousness of the delay increases." *Id.*

In his brief, however, defendant does not argue that he was prejudiced as a result of the delay in his trial. He merely contends that the State denied his constitutional guarantee to a speedy trial by calendaring the case for trial over a year after defendant's counsel appeared for the first time in Superior Court. Even if we accept defendant's argument as true, he must still argue that prejudice occurred based on pre-trial incarceration, anxiety and concern, or impairment to his defense. We cannot make defendant's argument for him. *See Hammonds*, 141 N.C. App. at 162, 541 S.E.2d at 174-75 (addressing only the "impairment to defense" inquiry because the defendant argued in his appellate brief that he was prejudiced solely by this third factor).

However, even upon review of the record, transcripts, and Judge Gullet's findings of fact, defendant failed to establish prejudice.

Defendant was not incarcerated before trial. Thus, he suffered no oppressive pre-trial incarceration.

Defendant argued to Judge Gullet that the pending case caused anxiety and concern because he could not sleep, it prevented him from applying for better employment, and he could not obtain legal custody of his daughter. While the sleep and job situations weigh in favor of defendant's position, defendant maintains physical custody of his daughter and she lives with him full-time. Although defendant demonstrated an appreciable level of anxiety and concern, we give marginal weight to this factor in determining prejudice. *See Webster*, 337 N.C. at 681, 447 S.E.2d at 352 ("Although [anxiety and concern] are the kinds of things the speedy trial right exists to prevent, they do not loom as large as actual impairment of the defendant's ability to defend against the criminal charges themselves.").

Finally, defendant argued to Judge Gullet that he exhibited an impairment to his defense because some personal notes regarding the case were stolen. However, he testified that all of his witnesses were still available and he remembered the case details. Moreover, several affidavits in the court file detail the witnesses' memories and recollection of the events. Accordingly, defendant has not shown an impairment to his defense as a result of the trial delay.

In sum, after conducting a balancing test by considering the length of the delay, the reasons for the delay, the timing of defendant's assertion of his rights, and the prejudice to defendant, we hold that the State did not deny defendant's constitutional right to a speedy trial.

## III. Conclusion

We dismiss defendant's argument that he was denied a fair suppression hearing due to a violation of his sixth amendment constitutional rights because the constitutional issue was never raised before the trial court. We affirm Judge Gullet's order denying defendant's motion to suppress because she did not commit prejudicial error in failing to admit the audio and video recordings into evidence. Finally, we hold that the State did not violate defendant's constitutional right to a speedy trial.

Affirmed, in part, no prejudicial error, in part.

Judges CALABRIA and STEPHENS concur.

Report per Rule 30(e).